Good morning. May it please the court. I'm James Laughlin. I represent the appellant Jason Christensen. With the court's permission, I'd like to reserve two minutes of my time for rebuttal. The government concedes that the allocution error in this case is plainly erroneous under Daniels and therefore resentencing is required unless the court accepts its mootness argument. But it doesn't recognize that that concession is fundamentally inconsistent with mootness. Because the reason that Daniels finds plain error in the situation is because there is error if there's even the possibility the court might impose a different sentence if it hears an allocution, regardless of whether this court thinks it might actually do so. By the same token, the court's mootness precedent is clear and unequivocal that all that matters is whether a district judge has the statutory authority to impose a better sentence on remand. Let me ask you this. You want a reversal here, obviously, right? Yes. All right. And if we give you your reversal, then this whole proceeding is nullified, but he still is going to be serving the same amount of supervised release time even with the reversal, right? It expires the same time, right? If the court doesn't change anything on remand, that's correct. But I think that the court would have discretion to change things on remand. Well, how much better can you do than getting a reversal? Well, I mean, reversal is the first step to get it back to the district court, and then the district court is able to either reduce or eliminate the remaining term of supervision. Now, there's two – Well, the term of supervision is already established. That is really in place already. This is just an additional term of – it's not an additional term of supervised release. It's an additional three months or so, right? But the supervised release is exactly the same. It expires under the prior or under this one as well, isn't it? Yes. The end date of the supervision didn't change. Yeah. But there is – let me first distinguish between the two errors. One is a pure sentencing error, which means that it – and that's the one that the government concedes under Daniels. It would just go back for resentencing. We think that the entire revocation should be undone because of insufficient evidence. Okay. So what if I agree with you? You win. Then what? Then it goes back to the district court, and then the revocation is undone. And in that case, because if the court accepts our argument that, as it should, that the government is precluded from trying to reprove these allegations again, then you're correct. The term of supervision, absent further discretionary action by the court, would stay where it is right now. It stays the same. So you get a reversal. So the revocation proceeding, you know, is no longer going to be a black mark against him on his record, but he goes and he completes his term of supervised release. I don't understand why you're here. But that doesn't mean that this is moot, Your Honor, because there's two things. Because, first of all, let's say he commits new – allegedly commits new violations. The revocation that's in place now implicates what happens later on for at least two reasons. One, certainly the court is going to look at it differently, whether that's a third revocation as opposed to a second revocation. Second, as I pointed out in the reply brief, once – if the court recognizes that my client shouldn't have served those three months in prison, then the BROP will treat that as time in the bank. If he does another revocation, then he gets credit for those three months down the road. More important, what could happen on remand is the defendant could go into the district court and say, I know that our term of supervision ends next April, but given the Ninth Circus ruling, I shouldn't have served those three months in prison. You should compensate me for that by reducing my term of supervision because you made a mistake. Because of that, I should – That's basically your argument, that you're not just happy with the reversal. You want it to go back. So you can argue that there should be less supervised release that's already been established on the prior proceeding. That's in place. That doesn't change. Well, Your Honor, as Your Honor knows, a defendant can go to a district judge at any time and ask for early termination. And like the Ninth Circuit precedent is absolutely clear. If the court has the ability – There's nothing that would prevent you from going to the district court judge with your reversal and ask for early termination. I get these applications all the time. That's why we want a reversal, Your Honor. But my question is why do you need more than that? What do you mean? You get a reversal on the merits. Correct. And then a reversal on the merits for insufficient evidence where the government – This case is no longer a viable case. You win. There's no basis for this revocation proceeding. The case is reversed, dismissed. Okay? So what more do you want than that? If Your Honor is asking whether it's reversal where the government doesn't get the chance to reprove these allegations below, then that's exactly the relief I'm asking for. I don't understand if the court – I think you want a remand. If I heard you correctly, you want a reversal and a remand back to the district court to see whether it can lower the existing term of supervised release. I'm sorry, Your Honor. There's two different issues. I thought that's what you said. The insufficient evidence issue and then there's – even if there's sufficient evidence, it should go back for resentencing. And perhaps I confused the court by starting with the resentencing issue. I thought you wanted a resentencing. I want the resentencing as a minimum given the government's concession of Daniel's error. I don't want to lose what I think was supposed to be the main issue in this case, which is that whether there was sufficient evidence to support the sentence imposed. Because I've got to say, it seems to me that I have a hard time understanding why this person doesn't appropriately qualify for mental health treatment given his conduct. And the sense that he's supposed to come back to all these appointments, isn't that by itself the fact that he's been given all these appointments indicative of some previous finding by a mental health professional that this man needs some additional help? So what's insufficient about that evidence? Well, Your Honor, I think there's two things. First of all, we do not dispute that he has mental health issues and that there was a mental health condition. So that's not really at issue. So at that point, I'm not sure what we're fighting about. The fight seems to be that at the revocation sentencing hearing, this was taken as a given and there wasn't a presentation of specific evidence with regard to here's the mental health professional that made this recommendation that led to these additional appointments that he didn't show up for. Well, Your Honor, if I can explain. Again, he had mental health issues. He got a mental health condition. The government's burden is approved. He violated that particular condition. And there's no question about him not showing up at the appointments. Your Honor, please let me explain. The specifics matter. Why do they have those appointments if he doesn't need help? Your Honor, he had 17 hours of therapy for 13 different appointments. He had 13 scheduled appointments. He showed up for 11 of them for 17 hours of therapy in three months. This is not a case where he just blew off therapy entirely. It's therefore incumbent upon the government to prove exactly what the treatment recommendations were so we know whether Mr. Christensen violated them. If there's no question that he didn't show up for some of the appointments that had been scheduled for him by a mental health professional, for me it's not a hard inference to say there is a preponderance of evidence that he violated the terms. Sure, but I'm going to tell you, it's not enough to say that the government's got to prove why he didn't show up for this particular appointment. No, that's not what I'm saying. What I'm saying is, can I give you an example which I think crystallizes it? One of the alleged violations is that he didn't show up for the April 16th appointment. He showed up for five other appointments that month for a total of nine hours. If the treatment recommendation was you show up for one appointment a week, you show up for five appointments a month, you show up for nine hours of therapy a month. He complied, even though he missed that appointment. But because the government didn't meet its burden to say exactly what was required by the treatment professional, we don't know and we can't infer that he violated that. That's the problem. I think we can infer, because I don't think the treatment professional sets up appointments that he's allowed to blow off. What's the inference of setting an appointment? For me, the inference is there was a need for that appointment. It's part of my recommendation. You're arguing to the contrary. Fine, but I don't have difficulty saying by a preponderance of the evidence the inference that I drew is a logical one and it's one the district court is entitled to make. You can prove to the contrary, but now we're just talking about an absence of evidence and an alleged failure by the government to prove where, for me, it's there by the fact that the appointment was set. What was the treatment recommendation of the evaluating professional? I'm trying to understand what actually the recommendation was that he's charged with violating. That's what I'm trying to understand. There's supposed to be a treatment plan, right? Correct. I don't know what the treatment plan is. Obviously, he has mental issues, all right? And it seems that this case is all about whether or not he missed two appointments or not. But I don't know what the treatment recommendation was that we're dealing with. Correct, Your Honor. And the government points to certain things in the report that at best reflect that he was ordered to perform some therapy. But that's so vague we don't know whether missing two out of 13 appointments violates the conditions. I'm sorry. I know I'm way over my time. So unless the court has any questions. You can have a couple minutes for rebuttal. Thank you. May it please the court. Greg Scali for the United States. Good morning, Your Honors. It seems to me that he's been sentenced for three months for missing two appointments. What else is involved here? Your Honor, to answer the court's question, Judge Block, your question to my opposing counsel concerning what was the treatment recommendation. Government's Excerpts of Record 1, which is Exhibit 12 from the hearing, contains the following language. If continued treatment is recommended, discuss the plan for next month. And then it says, it is recommended to address Jason's cognitive decline slash delusions, his anger, and his transition back into the community. And it refers to, and this is a monthly treatment report for September 2018. So it does specify what the treatment recommendation is. Now, is it true that I didn't elicit testimony from the United States Probation Officer that the mental health appointments that we put in evidence of, that those were made pursuant to that treatment recommendation specifically? I didn't elicit that specific testimony. And I didn't elicit the testimony that the initial intake by Detection and Treatment Resources Incorporated, that that was a mental health evaluation. It's almost a tautology, the additional evidence that counsel's looking for in the appellate briefing in this case. Yes, he had an initial intake, and it was a mental health evaluation. And it occurred, let me just respond to his points in the reply brief, it occurred after defendant went into the RRC on August 27, 2018. So we know it happened after the condition was ordered in his May 2018 revocation. We also know it occurred before the first missed appointment on October 16, 2018, because it's contained in the monthly treatment report for September 2018. Now, counsel says in his reply brief, well, that report is only filled out on October 22. So we don't know if it happened before the October 16 appointment. Well, but it's specifically for the period covering, and I'm quoting from government's excerpts of Record 1, for the period covering September 1, 2018 to September 30, 2018. So we don't do know, and there is plenty of evidence in the record from which to make the reasonable inferences that the district court made here, especially under the standard of review, viewing this evidence in the light most favorable to the government. Any rational trier of fact can make these reasonable inferences by a mere preponderance of the evidence. So unless the Court has further questions on the sufficiency issue, I'd like to move to the next. Just point in the record where you established what the treatment recommendation of an evaluating professional was that apparently you rely upon as justification for finding there's a revocation here. Just point to me in the record where you submitted evidence to the district court judge. Here's the evaluating professional, Dr. X, Dr. Y. Here was his treatment recommendation, and this is what we claim has not been complied with. I just want to see it in the record. Government's excerpts of Record 1 through 6, Your Honor. They're monthly treatment reports. Stop, because they're not. I mean, what I have here, maybe I've got a misnumbered version. There's one under seal. That's what has me confused. Yes, Your Honor. So the government and counsel, and I think appropriately, redacted the initial submission of those. There's mental health information in there. So I have to look at the one that's under seal to get to what you're looking for. Correct, Your Honor. So that's why I'm referring, there is a copy, there's a duplicate, but it's hazard to action. Government's excerpts of Record 1 through 6 is what contains the language I read at the outset of my comments this morning about it is recommended to address Jason's cognitive decline and delusions, his anger and his transition back into the community. That, Your Honor, is what I'm looking for. And that's not an evaluation by a professional. Well, Your Honor, I would submit that it is a treatment recommendation. It's a recommendation about how to treat him. But that goes back to point one. At the time of the sentencing, we always say that there should be mental health evaluation and the treatment in the discretion of the probation department, whatever. That's a standard condition that you're talking about. But it seems here you're talking about a specific violation which goes beyond the standard condition that a person should be susceptible to mental health evaluation. I think that these are two different things. Well, Your Honor, that same document, Exhibit 12 from the exhibit, talks about goals this month focused on Jason's initial intake. Now, an intake in this context on a monthly treatment report for mental health is clearly a mental health evaluation. It then shows that he had an appointment on September 4, 2018. This is immediately after he's been ordered to attend mental health evaluation at Detection and Treatment Resources. But it seems to me that the whole proceeding here focused on whether he was justified in missing two appointments. And there was some evidence as to why he missed the two appointments. That seemed to be the focus. It seems to me that what happened here is that he's been sent to jail for three months because the district court judge wasn't satisfied with his explanation as to why he missed those appointments. Well, Your Honor, the focus of the testimony was, by the United States Probation Officer, was exactly that. It was did he have these appointments and did he go? Right. Because the defense did not raise this issue below of, well, is there some sense in which an intake isn't an evaluation? And is there some sense in which the provider is scheduling appointments that aren't in accordance with its treatment recommendation? I think they just fell in the cracks. You know, they could have been handled differently by all the parties, I suspect. Well, Your Honor, it is true that all of the parties below, to include probation, the government, defense counsel, and the district court, assumed kind of a common sense understanding of the situation here, which was that he was ordered to attend mental health. He attended mental health. Intake includes evaluation. And appointments that are set up specific to very specific, pursuant to very specific diagnoses by the provider, which are provided here in the monthly treatment reports, that appointments set up pursuant to that were in accordance with their treatment recommendations. They're not scheduled appointments. And that's different than the general type of thing that we do on revocations. Because it's standard to say you have to seek and comply with mental health treatment. That's a standard condition. We do it all the time. But here, in addition to that, you have a special condition, number five. Don't they mean two different things? No, Your Honor. I don't believe it's in a condition that's above and beyond a typical condition, ordering mental health evaluation and following the treatment of the recommended provider. Even if there's no special condition number five, the result would have been the same here either way, right? I'm sorry, Your Honor. I didn't quite follow the first question. Even if there was no such thing as special condition number five, he could have still been held in violation because he didn't really comply with the general mental health requirements.  I'm sorry. I must have misspoke, Your Honor. No. It is only because there is the special condition number five that he's violated here. That is, as far as I understand, the only condition that refers to mental health. And that condition — Is there no general condition that he should comply with the directions of the probation department to obtain mental health, if so indicated? I don't believe so. I think that's a standard condition, isn't it? I would have to look. Your Honor, I believe — That's what I do anyway. But, you know, it's a standard with me. Yeah. And the probation department always recommends this. Whenever somebody has a history of mental problems, that they should be susceptible to seeking help at the discretion of the probation department. I'm not sure. I guess the important point is, Your Honor, I'm not relying on any other condition here. I am relying on the specific condition, special condition number five, about completing a mental health evaluation and following any treatment. I just would like to know what the evaluation of the professional was. Well, Your Honor, the evaluation of the professional was that he was — Do you seek medication? Do you do this particular type of therapy? Do you make yourself available for this type of treatment or that type of treatment? I don't see anything like that in this record. Your Honor, the evaluation was the specific diagnoses that are laid out on the second page of each of the — Your Honor, I would just return to the continued treatment that is recommended, which is to address his cognitive decline and delusions, his anger and his transition back into the community. I'll also note that if these appointments weren't in accordance with their treatment recommendation, why is the treatment provider sending the violation reports to the probation officer? So when he doesn't show up for these, they don't just say, Oh, well, that was sort of optional. We didn't really care about that particular appointment. That wasn't in accordance with our treatment recommendations. They actually send a violation report, and those are in the record as well. I believe it exhibits record 157 and 158. Those are the mental health providers saying, Hey, he didn't show up for these. So that also supports a reasonable inference that these were in accordance with their treatment recommendations. I want to raise a practical question, and I'll ask defense counsel for that too, and that has to do with Judge Guilford, who has announced that he's retiring at the end of this month. What's the practical impact of that at this point? Yes, Your Honor. I see I'm out of time. But I think we have a practical problem here, and I'm curious if there's any way that should impact upon how we deal with it. Absolutely, Your Honor. And I think I'm needing a moment to answer that question fully. I think the best way, and I think the premise of the court's question, correct me if I'm wrong, is, well, government isn't. Well, we know the case is going to go back because of the lack of allocution. Maybe it doesn't have to go back because we reach another verdict or another decision, but the question becomes, we don't have the district judge anymore. Right. It's going to have to be reassigned. And specifically, government, some of your brief, correct me if I'm wrong, but some of your brief relies on that this specific district court said a number of things that. You could argue that, hey, this is futile because we know what's going to happen, but we don't have that district judge anymore. Right. Or won't in a week. So, Your Honor, I guess let me just address mootness generally because I think that helps, but then I'll get to specifically Judge Guilford. On the mootness issue, because I think that's what this is most relevant to, the best way to view this is to ask, what does defendant get if he gets everything? So this Court finds it's not moot. You reverse for insufficiency of the evidence, and double jeopardy precludes any further proceedings. There isn't any new resentencing hearing. This thing just ends and he goes back on his old term of supervised release. So there isn't some resentencing hearing. He also makes the argument that because of this three-month sentence, that possibly if he goes back, he allocutes and gets assigned to another judge, that that judge could reduce his term of supervised release. That's extant from the prior proceeding. But I point out that you can always make that application. I modify terms of supervised release all the time. He could have done it this morning. He could have done it yesterday. He could do it tomorrow. But the other thing to just sort of look at procedurally is if he gets everything he wants, there will be no resentencing proceeding. So for there to be this resentencing proceeding, he has to fail on his double jeopardy claim. So in order for him to maintain this case or controversy, he actually has to lose part of his appeal. Now, the language of whether there's a case or controversy, all these cases basically say do you have a favorable, if you have a interest and a favorable outcome on appeal. So if he's going to be reversed, are you satisfied with that? You're not going to pursue this any further from the government's perspective. It will be over, right? Your Honor, that we're hoping we don't have to have that conversation, but that certainly hasn't happened. And that's part of the speculative nature of him, whether he'll have any injury, any ongoing injury to correct. We would still have to let's say we lose on sufficiency, win on double jeopardy. We still have to make the determination, yeah, we're going to do this again. Probation is going to have to decide they're going to do it again. We're going to have to actually do it again. All of that is so speculative. You're not interested in doing that again, are you? I mean, there's a reversal. You know, he still is going to have to serve the next month or two. That will be the end of it all. He can make an application for a modification of his prior condition of supervisory lease. What is it that you want? Well, Your Honor, I don't want to – you know, probation is an arm of the court, and I don't want to bind probation by my comments today. Probation was obviously, through their efforts in this case, trying to keep somebody who clearly posed a danger to the community to have his mental health supervised adequately. I want to make sure I also answer Judge Clifton's question about Judge Guilford. I think it's important to note that even though this could go to another judge, again, the notion that that judge is going to overturn the decision of the judge, the district court in Eastern District of Washington, and overturn the kind of explicit, well-articulated position of Judge Guilford, I think is very, very speculative. And for that reason, I think the government's arguments about mootness aren't undermined. I hear you, but it gets harder. I mean, it's one thing to say, look, we know what Judge Guilford's going to do, but now it's going to be Judge – well, I guess we don't know – Judge X. So that's why I raised the question. I understand, Your Honor, and I – yes. And if there are no further questions, I know I'm way over my time. Great. Thank you. Thank you. Your Honors can't accept the government's mootness argument without jettisoning its own precedent in favor of the Second Circuit case on which it relies, Blackburn. And even Blackburn, the majority, and Justice Sotomayor in dissent, recognize that that case was going against the consensus of all the other circuits, including this one. This court has to follow its own precedent. If the court does go down that road, putting the retirement aside, if the court looks at pages 11 through 13 of the Executive Record, Judge Guilford is actually quite equivocal. He says, I don't know the background on that yet. It may well be you're right, he's not susceptible to supervision. I need – I don't have sufficient evidence about that. He expressed openness, not certainness, but openness. Well, he heard the recommendations of both sides, let's not keep doing the supervised release thing and decided, no, that's not the route he's going to take. Right, but for mootness – A different judge could do something else. I understand that. A different judge could look at it entirely different. But even Judge Guilford, it's – this reflects that, first of all, the government ignores the importance of the allocution. An allocution very well may make Judge Guilford say, you're right, this guy is not immunable to supervision. Or make whatever judge say. Whatever judge. So I think that this should go back – I think this needs to go back for a minimum for resentencing, but I also think there isn't sufficient evidence for the reasons I discussed before. Just to – not to leave anybody wondering, I raised the Judge Guilford issue in part because it's a practical unfolding, but also because it seemed to me it tore the legs out of what argument the government had to offer on mootness. So I was just trying to sort of bury that so we can move on from there. So you don't need to talk to me about mootness anymore. Okay. Thank you. Unless the Court has any other questions. Thank you. Thank you.
judges: Clifton, Block, Lee